Ruffin, C. J.
 

 We think the decision of his Honor good at. law. It need not now be decided, which of the two, the person by whom a slave was hired out, or the person to whom the slave was hired, as between themselves, is bound to provide or pay for the requisite medical attendance during the term. The only question in this case is, whether the physician is to look to the person, who employed him, for his bill, or is at liberty to charge another person, who did not employ him, or have any knowledge of the sickness of the slave, or of the plaintiff’s attendance. We think very clearly, the former. If indeed, the slave had not been hired out, the owner would not be liable for the physician’s bill, unless there was a request of the owner or a subsequent promise to pay. At least, that must be the general rule; though it may be liable to an exception, that where it is a case that may be called one of life and death, or there is a pressing necessity for immediate assistance, the master would be liable for the attendance, that was indispensable, before there was a reasonable time and opportunity for notice to the master. But, unless in a case of that kind — if even in that the services of the physician without the request of the owner, and at the instance of the slave, or any one else, must be deemed gratuitous, in respect to the master. So it was decided in New-York, in
 
 Dunbar
 
 v.
 
 Williams,
 
 10 John. 249. And even the exception just stated, which is admitted in that case, is very far from being established by authority, as will be seen by the cases cited in
 
 Dunbar
 
 v.
 
 Williams
 
 and by the case of
 
 Newby
 
 v.
 
 Wiltshire,
 
 2
 
 *440
 
 Esp. Rep. 739. Lord Kenyon held, indeed, at
 
 Nisi Prius,
 
 in
 
 Scarman v.
 
 Castill, 1 Esp. Rep. 270, that the master was liable foi medicine for his servant, while in his service, upon ^ game gro'un¿ that he was bound to provide food and lodging for him. ’ But surely, if liable at all, he ought not to be, 'until notice of the necessity, and his refusal or neglect to provide proper attendance and medicines. But the very reasons given in that case shew, that this plaintiff cannot recover; for the liability is confined to the case, in which the servant is under the master’s roof, as a part of his family, and put upon the same footing as that for necessary food, thus placing the legal liability, in this case, upon the person in possession of the slave, who was also the employer of the plaintiff. In this court there has been no casé of this kind before, for we believe it has never been suggested hitherto, that the reversioner, if he may be so called, merely as such, was liable for me.dical services to the slave more than for his food, while hired out, where they had been rendered, not at his request, but at that of the possessor. The question, however, we find, has been made in an adjoining sister State, whose social condition is similar to our own. In the case of
 
 Wells
 
 v.
 
 Kennerly,
 
 4 McCord’s Rep. 122, the court of appeals in South Carolina held, that the general owner was not liable for the doctor’s bill, either by the rules of law or the policy of the country ; ‘for that person had no more right to throw the expenses of the negro’s sickness upon the general owner, than to an abatement of the hire during the period of sickness.
 

 It is said, however, that here it is different, because by the act of 1798, Rev. St. 89. s. 18 & 19, the support of the slave is imposed on the’ owner. But that act cannot affect this question'; for it is confined to provisions of food, raiment, and lodging, and these afe unquestionable charges upon the possessor, unless in a case of a fraudulent hiring by a solvent to an insolvent person, with a view to throw the expense of support oh the ‘wardens of the poor. ' Besides,' the act expressly requires the wardens to give the owner ten days notice to provide for the
 
 *441
 
 slave himself before they can do so and charge him. -So in no point of view is the act applicable here. ■
 

 Pee, Curiam, .Judgment affirmed.